# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WESLEY PRINCE,                ) | |
|            ) | |
|         **Plaintiff,**    ) | |
|            ) | |
| v.                 ) | **Case No. 18-CV-0282-CVE-JFJ** |
|            ) | |
| TURN KEY HEALTH CLINICS, LLC,   ) | |
|            ) | |
|         **Defendant.**[1]   ) | |

## OPINION AND ORDER

Now before the Court is defendant Turn Key Health Clinics, LLC's motion to dismiss (Dkt. # 23) the amended complaint (Dkt. # 20) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a response in opposition to Turn Key's motion (Dkt. # 38), and Turn Key filed a reply (Dkt. # 44). Turn Key subsequently filed a notice of supplemental legal authority (Dkt. # 49).

## I.

On July 18, 2018, plaintiff filed an amended complaint (Dkt. # 20) against, <u>inter alia</u>, Turn Key asserting a cause of action for negligence under the Oklahoma Governmental Tort Claims Act (OGTCA) and common law (count one), and a cause of action for deliberate indifference and conditions of confinement pursuant to 42 U.S.C. § 1983 (count two). <u>Id.</u> at 9-13.

---

[1]     Plaintiff originally brought this action against sixteen defendants. On June 18, 2018, plaintiff filed an amended complaint (Dkt. # 20), terminating defendants Board of County Commissioners for the County of Tulsa and Tulsa County Sheriff Vic Regalado. On July 23, 2018, plaintiff filed a stipulation of dismissal (Dkt. # 39) without prejudice as to defendants William Cooper, Flint Junod, Jesse White, Jane Kirby, Jon Echols, Trent Smith, Cindy Bilyeu, Nicole Cobb, Tamera Jackson, Danny Hickman, and Rhett Burnett. On August 17, 2018 and August 20, 2018, plaintiff filed joint stipulations of dismissal (Dkt. ## 45, 48) as to defendants City of Tulsa and Stephen Tidwell, respectively. Therefore, defendant Turn Key Health Clinics, LLC is to sole defendant remaining in this case.

Defendant Turn Key is an Oklahoma for-profit corporation that has contracted with the Board of County Commissioners for Tulsa County ("the Board") and Tulsa County Sheriff Vic Regalado to deliver mental and medical healthcare to arrestees at the David L. Moss Criminal Justice Center (DLMCJC). Id. at 2-3. Plaintiff alleges that, through these government contracts, Turn Key assumes responsibility for the government's obligation under state and federal law to provide healthcare services to people who are not free to seek healthcare for themselves. Id. at 3-4. Plaintiff alleges that Turn Key has implemented policies, procedures, customs, or practices to reduce the cost of healthcare services in a manner that would maintain or increase their profit margin. Id. at 4. Plaintiff claims that Turn Key's contract does not contain any provisions creating or establishing a mandatory minimum expenditure for the provision of healthcare services, and that the contract incentivizes cost-cutting measures in the delivery of healthcare services at DLMCJC in order to benefit Turn Key's investors. Id. at 4-5. Plaintiff alleges that, as a result, DLMCJC arrestees are deprived of adequate medical care. Id. at 5.

Plaintiff alleges that, on the evening of January 9, 2017, he became disoriented and wandered off of his job-site as a result of acute symptoms associated with renal failure and the onset of respiratory failure due to pneumonia. Id. Plaintiff asserts that at around 11:00 p.m. he encountered a Tulsa Police Department (TPD) officer, who, concerned for plaintiff's "obvious distress," called an ambulance to evaluate him. Id. Plaintiff claims that another TPD officer arrived shortly thereafter and arrested plaintiff on suspicion of public intoxication.[2] Id.

---

[2] Plaintiff alleges that the arresting officer did not administer a field test or permit the medical providers to evaluate him prior to arresting him. Dkt. # 20, at 5. The allegations regarding the acts or omissions of the TPD officers are no longer at issue, however, because the City of Tulsa has been terminated as a defendant in this case. Dkt. # 45.

Plaintiff was processed into DLMCJC at 12:10 a.m. on January 10, 2017, and, approximately four hours later, he received an intake screening by Turn Key's intake employee. Id. at 6. Plaintiff alleges that he informed Turn Key's intake employee that (1) he was not a drug user; (2) he was suffering from a medical emergency; and (3) he was in need of immediate medical assistance. Id. Plaintiff claims that Turn Key's intake employee disregarded plaintiff's statements, physical conditions, and "obvious signs of distress" by failing to properly screen, diagnose, or treat plaintiff for his "serious, life-threatening" condition. Id. According to plaintiff, Turn Key's intake employee noted that plaintiff was intoxicated and potentially a danger to himself, and placed plaintiff on suicide watch, but failed to order any drug screen or have plaintiff assessed by a medical doctor. Id. Plaintiff claims that the Turn Key intake employee's decision not to order a drug screen was directly related to Turn Key's cost-saving practices, and that such practices exposed plaintiff to a "substantial risk of serious harm by failing to take reasonable steps to determine the nature of [plaintiff's] worsening medical condition." Id.

Plaintiff alleges that Turn Key recommended him for general population housing, which plaintiff argues was in violation of Oklahoma jail standards requiring close supervision of persons in need of medical care. Id. Plaintiff alleges that Turn Key's classification of plaintiff was inadequate, and was directly caused by Turn Key's failure to provide adequate training and resources to the intake employee related to the Oklahoma jail standards, the National Commission on Correctional Health Care (NCCHC) standards, and "basic constitutional duties regarding the provision of adequate medical care and supervision." Id. at 7.

Plaintiff alleges that at approximately 10:00 a.m. on January 10, 2017, a Turn Key therapist noted that plaintiff appeared to be getting more intoxicated, was unsure of where he was or how he

got there, and was unable to take care of himself.  Id.  Plaintiff alleges that, despite this note, plaintiff

was not administered a drug test or provided care, and was placed back in general population.  Id.

Plaintiff alleges that when he returned to the general population, he and other inmates at DLMCJC

begged "Jailers"[3] to get help for plaintiff.  Id.

Plaintiff alleges that on January 11, 2017 at approximately 6:06 p.m., plaintiff was moved

to the infirmary at DLMCJC.  Id.  Plaintiff alleges that, despite not administering a drug test, Turn

Key put plaintiff on an opiate withdrawal protocol.  Id.  Further, plaintiff alleges that Turn Key

ordered multiple medications, despite the fact that no testing was done, no hands-on medical care

was provided by a physician, and no diagnosis had been made.  Id.  Plaintiff alleges that, for the next

six days, his condition continued to worsen as his kidneys and lungs began shutting down.  Id.

Plaintiff alleges that his condition had deteriorated to a point where he was unresponsive,

disoriented, and having difficulty breathing.  Id. at 8.  Plaintiff alleges that Turn Key did not conduct

further testing or inquiry into plaintiff's condition.  Id. at 7.

Plaintiff alleges that, on January 17, 2017, Turn Key diagnosed plaintiff with pneumonia and

administered two liters of normal saline.  Id. at 8.  At some point on January 17, plaintiff was

transported to St. John Medical Center (SJMC).  Plaintiff claims that SJMC hospital records do not

memorialize any effort at DLMCJC to initiate antibiotics prior to his arrival at the emergency

department.  Id.  Plaintiff alleges that the SJMC records further indicate that Turn Key employees

were well aware that plaintiff's conditions had begun seven days prior to his arrival at the emergency

department.  Id.  Plaintiff alleges that the emergency department determined that plaintiff was

---

[3]    Plaintiff does not define the term "Jailers."  The Court assumes that plaintiff is referring to
       jail officials, rather than Turn Key employees.

suffering from renal and respiratory failure and, therefore, he was intubated and admitted to the intensive care unit (ICU) in critical condition.  Id.  Plaintiff alleges that, due to his kidney failure, he was placed on hemodialysis at least once per day from January 17 - 21, 2017, and again on January 23, 2017.  Id. at 9.  Plaintiff alleges that he was moved from the ICU to a regular patient room on January 22, 2017, and remained there for another six days until his discharge on January 28, 2017.  Id.

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  Id. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 562.  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant.  Id. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).

## III.

Defendant seeks dismissal of plaintiff's amended complaint pursuant to Rule 12(b)(6), arguing that plaintiff has failed to state a claim upon which relief can be granted under federal law

or Oklahoma state law.  Dkt. # 23.  The Court first addresses defendant's arguments for dismissing plaintiff's federal law claim (count two), and then turns to defendant's arguments for dismissing plaintiff's Oklahoma state law claim (count one).

A. 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead that the conduct complained of was committed by a person acting under color of state law, and that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States.  West v. Atkins, 487 U.S. 42, 48 (1988).

1.  Acting Under Color of State Law

"Under Section 1983, liability attaches only to conduct occurring 'under color of state law.' Thus, the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'"  Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1998)) (alteration in original).  As a grounds for its motion to dismiss, Turn Key argues that it is not the proper defendant for plaintiff's § 1983 claim based on conditions of confinement,[4] because the requirement to provide humane conditions of confinement applies to jail officials and the sheriff, not to a private medical contractor such as Turn Key.  Dkt. # 23, at 17.

---

[4]     Plaintiff asserts two bases for his § 1983 claim: deliberate indifference and conditions of confinement.  Although defendant argues that Turn Key is not the proper defendant for the "conditions of confinement" basis only, both the "deliberate indifference" basis and the "conditions of confinement" basis relate to the government's obligation to provide adequate medical care to detainees.  See Wilson v. Seiter, 501 U.S. 294, 299 n.1 (1991) ("[I]f an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement").  Therefore, the analysis for determining whether Turn Key can be considered to have been acting under color of state law in providing medical care to plaintiff and, thus, whether Turn Key is a proper defendant for plaintiff's § 1983 claim is the same for both bases of plaintiff's § 1983 claim.

Most defendants in § 1983 suits are public employees, but in certain circumstances, private persons can also act under color of state law. In West, the Supreme Court held that a private doctor, who had contracted with the state to medical services to inmates, was acting under color of state law for purposes of a § 1983 suit. West, 487 U.S. at 44, 54-55. The Court reasoned that, because "[t]he State was constitutionally obligated to provide medical treatment to injured inmates, . . . the delegation of that traditionally exclusive function to a private physician gave rise to a finding of state action." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 55 (1999) (summarizing the Court's reasoning in West). Thus, as a matter of law, a private party that has contracted to provide healthcare services to inmates and pretrial detainees is acting under color of state law in providing those services and is, therefore, a proper defendant in a § 1983 suit.

Here, plaintiff alleges that the Board and the Tulsa County Sheriff are obligated under state and federal law to provide medical care to inmates and pretrial detainees, and that Turn Key, a private corporation, has assumed responsibility for this obligation by contracting with the Board and the sheriff to deliver those healthcare services. Dkt. # 20, at 2-4. The Court finds that such allegations are sufficient to plausibly allege that Turn Key was acting under color of state law for purposes of § 1983 when undertaking its duties to provide medical care to plaintiff. Accordingly, the Court finds that Turn Key is the proper defendant for plaintiff's § 1983 claim.

### 2. "Persons" to Whom § 1983 Applies and Municipal Liability Theory

Before turning to whether plaintiff has sufficiently alleged the deprivation of a constitutional right, the Court must first consider whether a corporation–as opposed to an individual–acting under color of state law can be considered a "person" subject to liability under § 1983, and, if so, under what theory. In Monell v. Department of Social Services of New York, 436 U.S. 658 (1978), the

7

Supreme Court held that a municipality is "included among those persons to whom § 1983 applies," but it cannot be held liable under § 1983 solely because it employs a tortfeasor (i.e., pursuant to a respondeat superior theory). Id. at 690-91. Rather, a municipality can be held liable under § 1983 only if it has an "official municipal policy of some nature" that "'causes' an employee to violate another's constitutional rights." Id. at 691-92. The Tenth Circuit has held that Monell's municipal liability theory applies equally to private entities acting under color of state law. Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 n.13 (10th Cir. 2003). Thus, in order to maintain a § 1983 claim against Turn Key, plaintiff must sufficiently allege a theory of municipal liability.[5]

Defendant argues that plaintiff has failed to allege facts sufficient to state a constitutional claim based on municipal liability. To establish municipal liability, a plaintiff must show (1) the existence of a policy or custom, and (2) that there is a direct causal link between the policy or custom and the constitutional injury alleged. Bryson v. Oklahoma City, 627 F.3d 784, 788 (2010). "When the asserted policy consists of the failure to act, the plaintiff must demonstrate that the municipality's inaction was the result of 'deliberate indifference' to the rights of its inhabitants." Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993). The Tenth Circuit has described several types of actions which may constitute a municipal policy or custom:

---

[5]     Accordingly, Turn Key may not be sued under § 1983 based on a theory of respondeat superior. Nonetheless, plaintiff argues that the federalism concerns that compelled the Supreme Court's bar against respondeat superior liability in Monell are not present here and, therefore, the Court may impose respondeat superior liability for constitutional violations committed by corporate entities. Dkt. # 38, at 11. However, the Tenth Circuit case law clearly establishes that private corporations acting under color of state law cannot be held liable under § 1983 based on a theory of respondeat superior. This Court is bound by that clearly established precedent.

> (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policy-making authority"; (4) "the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

Bryson, 627 F.3d at 788 (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189-90 (10th Cir. 2010)).  Plaintiff relies on the first and the fifth of these potential grounds for municipal liability.[6]

### a.  Formal Policy or Regulation

Plaintiff alleges that Turn Key has a policy of reducing the cost of healthcare services in a manner that would maintain or increase its profit margin.  Dkt. # 20, at 4.  Plaintiff further alleges that Turn Key's contract incentivizes cost-cutting measures in the delivery of healthcare services at DLMCJC to benefit Turn Key's investors, while depriving arrestees at DLMCJC from receiving adequate medical care.  Id. at 5.  Taking the allegations in plaintiff's complaint as true, the Court finds that plaintiff has alleged facts sufficient–albeit, minimally sufficient–to plausibly allege the existence of a policy or custom of cost-saving.

---

[6]  Defendant argues that plaintiff cannot maintain a § 1983 claim against Turn Key under a municipal liability theory because Turn Key did not have final decision-making authority for DLMCJC.  As noted, however, Bryson provides that "the decisions of employees with final policy-making authority" and "the ratification by such final policymakers of the decisions . . . of subordinates" are simply two of five alternative grounds for establishing municipal liability.  Where a plaintiff relies on any of the three remaining grounds for municipal liability, as plaintiff does here, the defendant need not have final decision-making authority.  Accordingly, the Court rejects defendant's argument that the § 1983 claim must be dismissed because Turn Key does not have final decision-making authority for DLMCJC.

In terms of causation, plaintiff alleges that Turn Key's cost-saving practices directly resulted in the Turn Key intake employee's decision not to order a drug screen at intake. However, this allegation, without more, fails to directly link the cost-saving practices to the constitutional injury alleged. As discussed in more detail below, the constitutional injury alleged is the denial of adequate medical care. Plaintiff does not assert that his constitutional injury resulted from an intake employee's decision not to order a drug screen at intake (and, in any case, the Court assumes that the failure to order a drug screen, without more, would not state a prima facie claim of Eighth Amendment cruel and unusual punishment based on the denial of medical care). Even assuming, for the purposes of analysis, that the alleged failure to order a drug screen is one of many alleged acts or omissions that, combined, amount to a denial of medical care, plaintiff fails to allege any other specific acts or omissions that were directly caused by Turn Key's cost-saving practice. Similarly, the Court finds that plaintiff's allegation that the cost-saving practices "exposed plaintiff to a substantial risk of serious harm by failing to take reasonable steps to determine the nature of plaintiff's worsening medical condition" is generalized and speculative. To sufficiently allege causation for the purposes of municipal liability, plaintiff must allege the specific treatments or care that he was denied as a result of the cost-saving practices.[7] Moreover, to move beyond the realm of

---

[7]     In Sherman v. Klenke, 653 Fed. App'x 580 (10th Cir. 2006), the Tenth Circuit stated that it "find[s] persuasive the Third Circuit's decision in Winslow v. Prison Health Services[, 406 Fed. App'x 671 (3d Cir. 2011).]" Id. at 592 (This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.). In Winslow, the Third Circuit explained that, to sufficiently plead that a cost-cutting policy caused the alleged violation, the complaint must allege "(1) what the relevant policies are, (2) what basis [plaintiff] has for thinking that policies to save money affected his medical treatment, [and] (3) what specific treatment he was denied as a result of these policies." Winslow, 406 Fed. App'x at 674. This Court agrees with the Tenth Circuit that the Third Circuit's decision in Winslow is persuasive.

speculation, plaintiff must allege his basis for asserting that the denial of those treatments or care was a result of the cost-saving practices.[8] Accordingly, the Court finds that plaintiff failed to sufficiently allege that Turn Key has a formal policy or custom that directly caused the constitutional injury alleged.

### b. Failure to Adequately Train Employees

Plaintiff also relies on the fifth of the potential grounds for municipal liability, which is the failure to adequately train or supervise employees. In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court set forth the requirements for maintenance of an action for failure to adequately train: plaintiff must identify a particular deficiency in the training program and show a causal link between the training deficiency and the plaintiff's constitutional injury. Id. at 391. Here, plaintiff alleges that Turn Key failed to "provide adequate training and resources to the intake employee related to the Oklahoma Jail Standards, the NCCHC standards, and basic constitutional duties regarding the provision of adequate medical care and supervision." Dkt. # 20, at 7. As an initial matter, it is relevant that plaintiff alleges that Turn Key failed to provide adequate training and resources to "the intake employee," as opposed to all employees or all intake employees. Id. (emphasis added). In Canton, the Supreme Court explained that the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Canton, 489 U.S. at 390-91. Therefore, to the extent plaintiff alleges that Turn Key failed to provide

---

[8]      The Monell opinion stresses the importance of the "causation" element for municipal liability. The Court explains that "Congress did not intend § 1983 liability to attach where such causation was absent." Monell, 436 U.S. at 692. Moreover, the "causation" element is the factor that distinguishes the municipal liability theory from the respondeat superior theory.

adequate training to only the Turn Key intake employee that assisted plaintiff, such an allegation is insufficient to establish a policy or custom for municipal liability. Assuming, for the purposes of analysis, that plaintiff is alleging that Turn Key's training program for all employees is inadequate, the particular deficiency identified by plaintiff is the failure to train on the Oklahoma Jail Standards, the NCCHC standards, and basic constitutional duties regarding the provision of adequate medical care and supervision. In terms of causation, plaintiff alleges that the failure to adequately train "directly caused" Turn Key's "inadequate classification" of plaintiff when recommending him for general population housing, because such a classification violated the Oklahoma jail standards. However, the Court finds that such an allegation fails to show a causal link between the training deficiency and the constitutional injury alleged. The constitutional injury alleged is not that plaintiff was placed in general population housing. As discussed, the constitutional injury alleged is the denial of adequate medical care. Accordingly, plaintiff must allege how the failure to adequately train directly caused the denial of adequate medical care.

Moreover, as noted, "municipal liability based on a policy of inadequate training requires proof of the municipality's 'deliberate indifference' to its inhabitants–i.e. the failure to train must 'reflect a "deliberate" or "conscious" choice by a municipality.'" Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998).

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is "highly predictable" or "plainly obvious" consequence of a

municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Id. at 1307-08.  Plaintiff does not allege any facts whatsoever that would allow the Court to reasonably infer that the alleged failure to provide adequate training resulted from Turn Key's deliberate indifference.  Although plaintiff alleges that "Turn Key knew from prior incidents that its practices caused constitutional violations, and that future constitutional violations were a highly predictable or plainly obvious consequence of enforcing them," plaintiff does not explain whether he is referring to the alleged cost-saving practices or the alleged failure to train, and does not identify those "prior incidents."  Moreover, plaintiff's allegation is merely a bare recitation of Barney's requirements for establishing deliberate indifference in the municipal liability context. See Ashcroft v. Iqbal, 556 U.S. 662, 578 (2009) (holding that complaints that offer no more than "labels and conclusions" or "a formulaic recitations of the elements of action will not do").  Accordingly, the Court finds that plaintiff failed to sufficiently allege municipal liability based on either a formal regulation or policy statement, or a failure to provide adequate training to employees.

### 3.  Conduct Violated a Constitutional Right

Even if plaintiff had sufficiently alleged municipal liability, plaintiff must also sufficiently allege that he was deprived of a right, privilege, or immunity secured by the Constitution and laws of the United States.  Plaintiff's amended complaint purports to state a claim for deliberate indifference[9] and conditions of confinement relating to the provision of adequate medical care and supervision.  Dkt. # 20, at 7, 11.  It is well-established that states have a duty, imposed under either

---

[9]     "Deliberate indifference . . . is defined differently for Eighth Amendment and municipal liability purposes."  Barney, 143 F.3d at 1307 n.5.

the Eighth Amendment (as applied to the states through the Fourteenth Amendment) with respect to convicted prisoners, or the Due Process Clause of the Fourteenth Amendment with respect to pretrial detainees in state custody, to "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate . . . medical care . . . ." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)). Because plaintiff was a pretrial detainee, the Due Process Clause governs his claim of unconstitutional medical care; however, the Eighth Amendment standard provides the benchmark for such claims. Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). Therefore, the Court considers whether plaintiff has sufficiently alleged a claim under the Eighth Amendment.[10]

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). There are two components to this standard: first, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious"; and, second, a plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." Wilson, 501 U.S. at 298.

---

[10] As a grounds for its motion to dismiss, defendant argues that plaintiff's amended complaint does not articulate the specific constitutional right of which he was allegedly deprived. The Court notes that, although plaintiff does not use the phrases "Eighth Amendment," "Due Process Clause," or "Fourteenth Amendment" in his amended complaint, the failure to cite to specific constitutional provisions does not necessitate dismissal. Plaintiff clearly identifies deliberate indifference to his medical needs and conditions of confinement as the bases of his § 1983 claim. As noted, it is well-established that pretrial detainees have a constitutional right to adequate medical care. In fact, defendant concedes that "it is reasonable to infer from the plain language of the Complaint that Plaintiff is asserting an Eighth Amendment violation based on his claim of inadequate medical care." Dkt. # 23, at 10. Therefore, the Court finds that plaintiff sufficiently identified a constitutional right.

Plaintiff argues that he does not need to establish the subjective component of the deliberate indifference standard for an Eighth Amendment violation, because "deliberate indifference in the entity context is an objective standard." Dkt. # 20, at 6. Plaintiff is correct that "deliberate indifference" in the municipal liability context is an objective standard; however, plaintiff fails to realize that he is required to allege municipal liability in addition to the underlying constitutional violation. See Monell, 436 U.S. at 692. Therefore, the "deliberate indifference" standard in the municipal liability context is separate from, and in addition to, the "deliberate indifference" standard in the Eighth Amendment context. Accordingly, plaintiff is required to sufficiently allege both the objective component and the subjective component of the deliberate indifference standard for an Eighth Amendment violation.

### a. Objective Component

To satisfy the objective component, an inmate must allege facts to demonstrate that the deprivation was "sufficiently serious." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)). "[T]he question raised by the objective prong of the deliberate indifference test is whether the alleged harm (such as heart damage) is sufficiently serious . . ., rather than whether the symptoms displayed to the prison employee are sufficiently serious . . . ." Mata v. Saiz, 427 F.3d 745, 753 (10th Cir. 2005). Even when there is a sufficiently serious medical need, however, delayed "medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Id. at 1210.

Plaintiff alleges that he was suffering from renal and respiratory failure due to pneumonia. The Court finds that when an individual is suffering from renal and respiratory failure due to pneumonia, which is a potentially fatal medical condition, the need for medical care is so obvious that even a lay person would recognize the necessity for a doctor's attention. Therefore, plaintiff has shown that his medical need was sufficiently serious to require prompt medical attention.

Second, the Court must consider whether plaintiff has alleged facts sufficient to show that the delay in medical care resulted in substantial harm. "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001). Plaintiff does not allege that he suffered lifelong handicap or permanent loss. Thus, the only basis for satisfying the "substantial harm" requirement is by showing that plaintiff suffered considerable pain. However, nowhere in plaintiff's amended complaint does he allege that he was in any pain, let alone considerable pain.[11] While the Court assumes that an individual suffering from renal and respiratory failure is not comfortable, the plaintiff is the only person who can allege whether and to what extent he was experiencing pain. The Court cannot simply assume that plaintiff was suffering considerable pain absent any allegations to reasonably support such an inference. The Court finds that plaintiff has failed to allege facts sufficient to show that the delay in medical care resulted in substantial harm. Accordingly, plaintiff has failed to sufficiently plead the objective component of a claim for denial of adequate medical care under the Eighth Amendment.

---

[11]     In his response to the motion to dismiss (Dkt. # 38), plaintiff alleges for the first time that the medical conditions plaintiff was suffering were "painful." Even if the response to a motion to dismiss could amend plaintiff's complaint, which it cannot, plaintiff still fails to allege "considerable" pain.

### b. Subjective Component

To satisfy the subjective component, plaintiff must allege facts to demonstrate that a Turn Key employee, acting pursuant to Turn Key policy or custom, "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" <u>Sealock</u>, 218 F.3d at 1209 (quoting <u>Farmer</u>, 511 U.S. at 837). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

In connection with his argument that he need not allege the subjective component of his claim for denial of adequate medical care, plaintiff argues that he "is not required to establish the individual liability of any single employee." Dkt. # 38, at 10. The Court agrees that an individual employee need not be held liable in order to hold Turn Key liable under § 1983; however, plaintiff is still required to allege that an individual employee or employees violated plaintiff's constitutional rights. As <u>Monell</u> makes clear, a municipality can be held liable under § 1983 only if it has an "official municipal policy of some nature" that "'causes' an employee to violate another's constitutional rights." <u>Monell</u>, 436 U.S. at 691-92 (emphasis added). "[A] municipality will not be held liable [for constitutional violations] where there was no underlying constitutional violation by

any of its officers."[12]  Hinton, 997 F.2d at 782; see also Martinez v. Beggs, 563 F.3d 1082, 1091 (10th Cir. 2009); Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002) ("Although Appellant may indeed show that Officer King has committed the prerequisite underlying Eighth Amendment violation, Appellant has not taken the subsequent step of linking the possible violation to a municipality custom or policy.").

Here, plaintiff identifies only one Turn Key employee, the Turn Key intake employee, whose acts and omissions were allegedly taken pursuant to a Turn Key policy or custom.  Therefore, the Court must consider whether plaintiff has sufficiently alleged that the Turn Key intake employee knew of and disregarded an excessive risk to inmate health or safety.  Plaintiff alleges that he informed the Turn Key intake employee that (1) he was not a drug user; (2) he was suffering from a medical emergency; and (3) he was in need of immediate medical assistance.  Moreover, plaintiff alleges that, at the time, he was demonstrating obvious signs of distress, and that approximately five hours earlier, a TPD officer had called an ambulance to evaluate him out of concern for plaintiff's "obvious distress."  Plaintiff alleges that, despite his express plea for medical assistance, his physical

_____

[12]     Plaintiff cites to Garcia v. Salt Lake County, 768 F.3d 303 (10th Cir. 1985), as support for his argument that plaintiff is not required to establish the individual liability of any single employee.  In Garcia, the Tenth Circuit concluded that "[a]lthough the acts or omissions of no one employee may violate an individual's constitutional rights, the combined act or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights."  Id. at 310.  Plaintiff did not allege this "collective action/inaction" theory in his amended complaint; rather, plaintiff raises the "collective action/inaction" theory for the first time in his response to the motion to dismiss (Dkt. # 38). Moreover, plaintiff identifies only one Turn Key employee (the intake employee) whose acts or omissions were allegedly taken pursuant to a Turn Key policy or custom and allegedly violated plaintiff's constitutional rights.  Even if plaintiff is not able to name or identify additional individuals, plaintiff must, at the very least, allege the acts or omissions taken by other individuals in order to rely on a "collective action/inaction" theory.

conditions, and his obvious signs of distress, the intake employee did not take any steps to screen, diagnose, or treat plaintiff, did not have plaintiff assessed by a medical doctor, and assigned plaintiff to general population housing. The Court finds that such allegations are sufficient to plausibly allege that the Turn Key employee knew of and disregarded an excessive risk to inmate health or safety.

Although the Court has determined that plaintiff failed to sufficiently allege all elements of his § 1983 claim based on municipal liability, it is mindful of the difficulty a plaintiff may encounter in trying navigate the pleading requirements for a § 1983 claim based on a violation of the Eighth Amendment where the action is brought against a private corporation based on municipal liability. Accordingly, this Court finds that defendant's motion to dismiss count two of the amended complaint should be granted, but that plaintiff should be granted leave to file a second amended complaint to correct the insufficiencies identified herein, if he can do so under Federal Rule of Civil Procedure 11.[13]

_____

[13]     Because the Court has dismissed count two, defendant's argument related to punitive damages is moot. However, if plaintiff does file a second amended complaint, the following analysis will apply to punitive damages. Defendant argues that, even though it is a private corporation, it should be afforded the immunity from punitive damages that is afforded to municipalities. Defendant does not cite any authority that addresses whether punitive damages may be recovered when an § 1983 action is brought against a private corporation based on a theory of municipal liability. In response, plaintiff cites to Revilla v. Glanz, 8 F. Supp. 3d 1336 (N.D. Okla. 2014), in which this Court held that a private entity is not entitled to the punitive damages bar that applies to governmental entities. The Supreme Court's reasoning in City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), which held that local governments are immune from punitive damages under § 1983, largely hinged upon the fact that the traditional purposes of punitive damages would not be served by imposing punitive damages upon local governments, because taxpayers would foot the bill, governments would likely have to increase taxes or reduce public services, and such an award would place the local government's financial integrity in serious risk. Id. at 267-70. As this Court explained in Revilla, those same purposes do not apply to a private corporation.

B. Oklahoma State Law

Plaintiff also brings a claim for negligence under the Oklahoma Governmental Tort Claims Act (OGTCA) and common law (count one). Defendant argues that plaintiff has failed to plead sufficient facts to establish the elements of causation and damages in his negligence claim against Turn Key. Moreover, defendant argues that, pursuant to the OGTCA, Turn Key is immune from liability for any claims of negligence under state law. Defendant filed a notice of supplemental legal authority (Dkt. # 49), bringing to the Court's attention the Oklahoma Supreme Court's recent decision in Barrios v. Haskell County Public Facilities Auth. et al., 2018 OK 90 (Okla. Dec. 4, 2018). In Barrios, the Oklahoma Supreme Court explains that the OGTCA, as amended in 2014, specifies that the state's immunity from suit extends even to torts arising from alleged deprivations of constitutional rights. The question, however, is whether this immunity extends to private corporations, such as Turn Key, that contract with the state to provide healthcare services. The Barrios opinion states that "the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA . . . . We have not been asked whether Turn Key Health, LLC or its staff are 'employees' under section 152(7)(b), but have assumed they are for purposes of answering the questions certified to us." Id. at 5 n.5. Although the Oklahoma Supreme Court did not definitively hold that Turn Key is an "employee" under the OGTCA, the Court finds persuasive the court's reasoning for assuming that Turn Key is an "employee." The Court finds that Turn Key is an "employee" under the OGTCA and, therefore, is immune from tort liability. Accordingly, defendant's motion to dismiss plaintiff's state law claim for negligence under common law and the OGTCA (count one) should be granted.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 23) is **granted**.

**IT IS FURTHER ORDERED** that plaintiff is granted leave to file a second amended complaint alleging his claim under 42 U.S.C. § 1983 only, no later than **January 25, 2019**.

**DATED** this 16th day of January, 2019.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE